IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD T. FARREN : <br> : <br> Plaintiff, : <br> : <br> vs. : <br> : <br> EXPERIAN INFORMATION : <br> SOLUTIONS, INC. : <br> and : <br> TRANSUNION, LLC : <br> and : <br> ANDERSON FINANCIAL NETWORK, INC. : <br> and : <br> GMAC : <br> and : <br> RJM ACQUISITIONS FUNDING, LLC : <br> : <br> Defendants. : <br> : | Civil Action No. 04-995 |

**PRE-TRIAL MEMORANDUM OF DEFENDANT,
RJM ACQUISITIONS FUNDING, LLC**

Defendant, RJM Acquisitions Funding, LLC ("RJM"), by and through its undersigned counsel, submits this Pre-Trial Memorandum in accordance with Local Rule 16.1(c), this Court's Standing Order, and this Court's Scheduling Order dated October 13, 2004.

**I.   NATURE OF THE ACTION AND JURISIDICTION**

This is an action against RJM, among others, brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681n and §1691o, and the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §1692(e), with various state law claims. RJM is entitled to judgment as a matter of law on Counts 2, 4, 5, 7, and 9 of Plaintiff's

Complaint[1] because (1) RJM fully complied with § 1681s-2(b) of the FCRA, (2) Plaintiff's state law claims are barred by the FCRA, and (3) RJM fully complied with the FDCPA.

Jurisdiction arises under 15 U.S.C. § 1681p, 28 U.S.C. § 1331, § 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

## II.   DEFENDANT'S COUNTER-STATEMENT OF THE FACTS

### A.   LIABILITY

In August 2002, RJM purchased from Fingerhut Corporation account #18491337399, which listed Richard Farren with a social security number of 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 as the debtor who owed $61.66 on the account ("Account"). Based on this information and the complete Fingerhut Statement of Account, in November 2002, RJM reported the Account to Experian and Trans Union as a debt in collections that was owed by Richard Farren.

RJM received a consumer dispute verification form ("CDV") from Experian on or about July 21, 2003, stating that the debtor, Richard T. Farren, had notified Experian that he disputed the Account on his credit report. As required by the FCRA, RJM conducted an investigation upon receipt of the CDV. RJM's investigation consisted of five (5) steps.

First, RJM's representative wrote the RJM account number that corresponded with the Account referenced in the CDV on the top right hand corner of the CDV. Second, RJM's representative compared all of the identity factors provided in the CDV to the identity factors in RJM's data file for the Account as provided by Fingerhut upon

---

[1] These are the only Counts of Plaintiff's Complaint that apply to RJM.

RJM's acquisition of the debt. The identity factors included the debtor's name, address, social security and Fingerhut account number for the Account. Third, RJM's representative reviewed the reason for the dispute indicated by the debtor on the CDV. In this case the debtor marked: "Not Mine – Provide Complete ID & Company/Collect Agency Name (D)."

Fourth, RJM's representative reviewed the contents of the "collector notes" in its file to determine whether the collector notes contained anything that would indicate that the information RJM had received from Fingerhut was not accurate. RJM's representative also reviewed the statement of transactions provided by Fingerhut to compare the identity factors, such as the debtor's name and social security number, and matched the identity factors listed on the CDV. Fifth, a RJM Supervisor also reviewed the CDV and the results of the representative's investigation and determined that the representative had verified the Account information as RJM had reported it to Experian.

RJM then reported back to Experian by forwarding the filled-in CDV back to Experian that the Account information had been verified as reported. RJM also reported back to Experian the address that RJM had on its file from Fingerhut that pertain to the Account.

On or about July 25, 2003, RJM received a CDV from Trans Union disputing the accuracy of the Account as reported by RJM. Just as RJM had done upon receipt of the CDV from Experian, RJM conducted its five-step investigation of the Account. This time, however, because this was the second CDV received by RJM on this Account, an RJM Supervisor conducted the first four steps of the investigation, and the results were then reviewed by RJM's Director of Credit Bureau Reporting. Similar to the Experian

CDV, RJM reported back to Trans Union by forwarding the filled-in CDV back to Trans Union that the information had been verified as reported.

Shortly thereafter, on or about August 13, 2003, RJM sent a letter to Plaintiff stating that it had purchased the Account and that RJM was the Plaintiff's new creditor ("the Letter"). The Letter included the "validation" language required by §1692g(a)(3)-(5) of the FDCPA and the mini-miranda language required by §1692e(11) of the FDCPA.

In response to the Letter, Plaintiff called RJM on August 20, 2003 at 2:29 p.m. and spoke to John Coscia. Based solely upon the Plaintiff's oral assertions, John Coscia noted in the file that the Account should be closed. In addition, Mr. Coscia electronically requested that Trans Union and Experian delete RJM tradeline on Plaintiff's credit report related to the Account.

### B. DAMAGES

At no time before the filing of this lawsuit did Plaintiff apprise RJM that he had been a victim of identity theft. Moreover, Plaintiff has produced no evidence that he was denied credit or credit opportunities at any time after May 2003. Moreover, Plaintiff has produced no evidence that he suffered frustration, embarrassment, waste of time, worry and emotional distress cause by RJM from the time RJM completed its reasonable investigations on August 7, 2003 until RJM deleted its reporting on Plaintiff's credit report on or about August 20, 2003.

### III. MONETARY DAMAGES CLAIMED

None at this time, however, RJM has placed Plaintiff on notice that it believes the allegations of the complaint are without merit because RJM is entitled to the bona fide error defense under the FDCPA. RJM expressly reserves the right to file any appropriate

motions for attorneys' fees and costs if warranted at a later date and to recover its costs and fees in defending this action.

IV. **WITNESSES**

| | |
|---|---|
| Richard Farren<br>4624 Shiloh Mill Blvd.<br>Jacksonville, FL 32246 | Damages |
| Neil Matte<br>RJM Acquisitions Funding, LLC<br>575 Underhill Boulevard<br>Syosset, New York 11791 | Non-Liability |
| Joan Tischler<br>RJM Acquisitions Funding, LLC<br>575 Underhill Boulevard<br>Syosset, New York 11791 | Non-Liability |
| Cassandra Pannell<br>RJM Acquisitions Funding, LLC<br>575 Underhill Boulevard<br>Syosset, New York 11791 | Non-Liability |
| Lynn Cohen<br>RJM Acquisitions Funding, LLC<br>575 Underhill Boulevard<br>Syosset, New York 11791 | Non-Liability |
| John Coscia<br>RJM Acquisitions Funding, LLC<br>575 Underhill Boulevard<br>Syosset, New York 11791 | Non-Liability |

V. **EXHIBITS**

In addition to Plaintiff's Exhibits P7, P8, P9, P11, P12 (which includes the Fingerhut Account Statement, P13, P14, RJM intends to use the following exhibits:

D1  Plaintiff's Experian Dispute Form dated 5/7/03
D2  Plaintiff's Trans Union Dispute Form dated 7/22/03
D3  RJM's Trans Union reporting tapes for October 2003.

Defendant also reserves the right to amend its list within a reasonable time before trial.

5

## VI.     TRIAL

RJM estimates that the entire trial should last 2-3 days.

## VII.    SPECIAL ISSUES

Like Plaintiff, RJM desires to use a projector with an overhead screen.  Thus, RJM would be willing to coordinate with Plaintiff and the Court staff to arrange for the use of such equipment at trial.

## VII.    LEGAL ISSUES, STIPULATIONS, AMENDMENTS OF PLEADINGS

One of the issues for trial is whether RJM complied with § 1681s-2(b) of the FCRA when it received CDVs from Experian and Trans Union regarding Plaintiff's dispute regarding RJM's tradeline on his credit report.  A data furnisher, such as RJM, has four duties under the FCRA upon receipt of a CDV from a consumer-reporting agency ("CRA") such as Experian or Trans Union.[2]  *See* 15 U.S.C. § 1681s-2(b).  A data furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of its investigation to the CRA with 30 days; and (4) if the investigation finds the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the person furnished the information and maintain consumer files on a nationwide basis.  15 U.S.C. § 1681s-2(b).

---

[2] The duty to investigate a consumer's credit reporting dispute rests primarily with the CRA reporting the debt.  CRAs such as Experian and Trans Union have an obligation under 1681i(a) to conduct a reinvestigation upon notice of a dispute from a consumer.  *See* 15 U.S.C. §1681i(a).  A CRAs obligation to reinvestigate requires more than "mere parroting" of the creditor's information.  *See* Crane v. Trans Union, LLC, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003)(citing Henson v. CSC Credit Servs., 29 F.3d 280, 286-87(7th Cir. 1994)).  CRAs bear some responsibility for evaluating the accuracy of information obtained from data furnishers.  *See* Crane, 282 F. Supp. 2d at 318(citing Stevenson v. TRW, Inc., 987 F.2d 288, 293 (5th Cir. 1993)).

Data furnishers are required to conduct a reasonable investigation pursuant to § 1681s-2(b).  *See* Evantash, 2003 U.S. Dist. LEXIS 23131 at *21.  Section 1681s-2(b)(1) requires a data furnisher to conduct a reasonable investigation of the data furnisher's own records to determine whether the disputed information can be verified.  *See* Johnson v. MBNA, 357 F.3d 426, 431 (4th Cir. 2004)(emphasis added); *see also* Malm v. Household Bank, 2004 U.S. Dist. LEXIS 12981, *13 (D. Minn. 2004).  The FCRA does not require the data furnisher to call or write the consumer who has disputed a debt.  *See* Wade v. Equifax, 2003 U.S. Dist. LEXIS 15686, *9 (N.D. Ill. 2003)(granting summary judgment in favor of a data furnisher because the data furnisher complied with the FCRA's investigation requirements by promptly reviewing its records and reporting those results to the CRA within thirty days).  Nor does the FCRA require the data furnisher to tell the CRA what to delete or add to a credit report.  Id.  The reasonableness of the investigation should be reviewed in light of the notice a data furnisher receives regarding the dispute.  *See* Malm, 2004 U.S. Dist. LEXIS 12981 at *13.

The second issue at trial is whether RJM violated with the FDCPA.  Specifically, the questions is whether RJM complied with the FDCPA in the following ways:

- Making a false representation of the amount, character or legal status of a debt;

- Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;

- Failing to disclose clearly in all communications made to collect a debt or to obtain information about the Plaintiff, that the Defendant is attempting to collect a debt and that any information will be used for that purpose; and

- Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the Plaintiff.

*See* Paragraph 66 of Court 5 of the Complaint.

RJM's Letter does not make any false representation regarding the character, amount or legal status of the debt in violation of the FDCPA. Moreover, RJM did not know or have reason to know that the credit information it reported to Trans Union and Experian regarding Plaintiff was false. Plaintiff has not demonstrated to RJM that the Account was not his by producing third party documentation such as a police report evidencing a claim by Plaintiff of identity theft. Moreover, RJM's Letter contained the proper notifications as required by the FDCPA. Finally, the statements in RJM's letter are true and accurate, RJM is not a collection agency. Thus, RJM fully complied with the FDCPA.

## VIII.  OBJECTIONS

### A.  AUTHENTICITY

a. P6 - Plaintiff failed to produce this exhibit before discovery cut off date.
b. P10 – This document was created by GMAC, not Plaintiff or RJM and Plaintiff has not listed a representative from GMAC to testify regarding the authenticity of such document.
c. P17 – Plaintiff failed to produce this exhibit before discovery cut off date.
d. P18 – Plaintiff failed to produce this exhibit before discovery cut off date.
e. P19 – Plaintiff failed to produce this exhibit before discovery cut off date.
f. P22 – Plaintiff failed to produce this exhibit before discovery cut off date.
g. P23 – Plaintiff failed to produce this exhibit before discovery cut off date.
h. P24 – Plaintiff failed to produce this exhibit before discovery cut off date.

Moreover, RJM reserves the right to object to any and all exhibits Plaintiff has not listed in his Pre-Trial Memorandum that may be offered at the trial in this matter.

    **B.**    **ADMISSIBILITY**

        a. RJM objects to the following witnesses named by Plaintiff:

            i. Eileen Little – Plaintiff failed to disclose this witness before discovery cut off date.

            ii. Countrywide Home Loans Corporate Representative – Plaintiff failed to disclose this witness before discovery cut off date.

            iii. Burdines Premier Plus Visa Card Corporate Representative – Plaintiff failed to disclose this witness before discovery cut off date.

        b. Plaintiff's Exhibits

            i. RJM reasserts it objections to Plaintiff's exhibits as stated infra Paragraph VIII(B)(a).

Moreover, RJM reserves the right to object to any and all exhibits and witnesses that Plaintiff has not listed in his Pre-Trial Memorandum that may be offered at the trial in this matter.  Further, RJM reserves the right to objects to any exhibit Plaintiff offers into evidence at trial based on grounds that become apparent at trial.

    **C.**    **EXPERT WITNESS**

        The parties have not designated any expert witnesses in this case.

D.  **OPINION TESTIMONY OF LAY WITNESS**

RJM has no objection at this time, however, RJM reserves the right to assert such objection if Plaintiff offers opinion testimony from a lay witness at trial.

Respectfully submitted,

**RJM ACQUISITIONS FUNDING LLC**

Dated: May 27, 2005

_Michael K. Sullivan_
Michael K. Sullivan
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500

Joseph S. Messer, *pro hac vice*
Maria L. Whiteman, *pro hac vice*
Messer & Stilp, Ltd.
166 W. Washington, Suite 300
Chicago, Illinois 60602
312-334-FIRM (3476)
or 312-345-0900
312-334-3434 (fax)

## **CERTIFICATE OF SERVICE**

Michael K. Sullivan hereby certifies that on this date, the foregoing Pretrial Memorandum served via U.S. Mail, postage prepaid, upon the following counsel of record:

>Mark D. Mailman, Esquire
>John Soumilas, Esquire
>Francis & Mailman, P.C.
>Land Title Building, 19th Floor
>100 South Broad Street
>Philadelphia, PA  19110

>*Michael K. Sullivan*
>MICHAEL K. SULLIVAN

Dated: May 27, 2005

120012.00601/21391462v1