**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD T. FARREN, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| RJM ACQUISITION FUNDING, LLC, | : | |
| Defendant | : | NO. 04-995 |

**<u>MEMORANDUM AND OPINION</u>**

Gene E.K. Pratter, J.                                                                July 26, 2005

     Defendant RJM Acquisitions Funding, LLC ("RJM") filed its Motion for Summary

Judgment on April 8, 2005, asserting that it is entitled to judgment as a matter of law on Counts

2, 4, 5, 7, and 9 of the Complaint[1] because (1) RJM fully complied with § 1681s-2b of the Fair

Credit Reporting Act ("FCRA"), (2) Plaintiff's state law claims are barred by the FCRA, and (3)

RJM fully complied with the Fair Debt Collections Practices Act ("FDCPA").  Plaintiff Richard

Farren replied to the Motion, arguing that summary judgment should not be granted on any of the

counts.  A hearing was held before the Court on June 1, 2005.  RJM filed a Supplemental Brief

on June 15, 2005.

     For the reasons discussed below, the Court grants the Motion in part and denies it in part.

The Motion is granted inasmuch as the Court finds that RJM's procedures are, as a matter of law,

reasonable and satisfy the requirements of the FCRA, that the state law claims are barred by the

FCRA, and that certain claims under the FDCPA (discussed below) are dismissed because Mr.

Farren has presented no evidence that raises a genuine issue of material fact as to their lack of

---

[1] These are the only Counts that apply to RJM.  Because RJM remains the only active
defendant in this matter, these are the only Counts still at issue.

efficacy.  The Motion is denied as to the argument that RJM fully complied with the FCRA and as to certain claims (discussed below) under the FDCPA.

I.      **BACKGROUND**

RJM is a corporation that purchases delinquent charged-off consumer debt and collects that debt.  (Affidavit of  Samir Shah, at ¶ 4).  RJM is not a credit reporting agency; nor is it a collection agency.  In August 2002, RJM purchased from Fingerhut Corporation an account which listed Richard Farren, with a social security number that Mr. Farren concedes is his, as the debtor who owed $61.66 for the purchase of a 9- piece chili set.  (Affidavit of Samir Shah, ¶ 5; Deposition of Neil Matte, at p. 153, ll.1-2).  In November 2002, RJM reported the Farren account to Experian Information Solutions, Inc. and Trans Union, LLC (both of which, unlike RJM, are credit reporting agencies) as a debt in collections that was owed by Richard Farren.  (Affidavit of Samir Shah, ¶ 6).

As it happens, in 1997, prior to the purchase of Mr. Farren's account by RJM, Mr. Farren allegedly was the victim of identity theft.  (Deposition of Richard Farren, at p. 27, l.22 - p. 28, l.14).  He filed a police report to that effect over the telephone, (Deposition of Richard Farren, at p. 62, l.16 - p. 63, l.5), but no copy of such a report has ever been produced in discovery. Additionally, Mr. Farren put a notice regarding his report on his credit report, (Deposition of Richard Farren, at p. 87, ll.7-18), but that notice apparently was no longer on the account by the time at issue.

In 2002, when he obtained a copy of his credit report following concerns that had been raised while he was attempting to obtain a mortgage, Mr. Farren became aware of inaccurately reported debts attributed to him which were unrelated to the 1997 identity theft incident.

(Deposition of Richard Farren, at p. 24, ll.3-6).  Mr. Farren was able to secure the mortgage, but only after filing disputes with the credit reporting agencies and certain debt collectors regarding the false information, including with RJM.  (Deposition of Richard Farren, at p. 24, ll.21-22). Mr. Farren sent letters to Experian and Trans Union disputing the inaccurate credit information and requested that a fraud alert once again be placed on his accounts.  (Deposition of Richard Farren, at p. 62, ll.16-19).  At approximately July 23, 2003, Trans Union placed a "consumer statement" and a "secure alert"  on Mr. Farren's credit report, indicating possible "credit fraud." (Trans Union Investigation Results with Consumer Statement dated 7-22-05, at p.1 and 5).

Experian, on July 21, 2003, and Trans Union, on July 25, 2003, sent a consumer dispute verification form ("CDV") to RJM to inform RJM that Mr. Farren was disputing the debt reflected on the Farren account held by RJM.  (Experian CDV signed by RJM 7-25-03; Trans Union CDV signed by RJM 7-29-03).  After receipt of the Experian CDV, RJM asserts that it conducted a five-step investigation.  (Affidavit of Joan Tischler, at ¶¶ 5, 6, 16, & 17; Affidavit of Cassandra Pannell, at ¶ 13).  The five steps are: (1) the RJM representative writes the RJM account number that corresponds with the account referenced in the CDV on the top right hand corner of the CDV; (2) RJM's representative compares all of the identity factors provided in the CDV to the identity factors in RJM's data file; (3) RJM's representative reviews the reason for the dispute indicated by the Debtor on the CDV; (4) RJM's representative reviews the activity on the account to determine whether the collector notes contained anything that would indicate that the information RJM had received from Fingerhut when the account was acquired was not accurate; and (5) a RJM supervisor reviews the work of the representative to ensure the

representative had verified the Account Information as RJM reports it.[2]  (Affidavit of Samir

Shah, at ¶¶ 7-13).    If RJM receives a second CDV disputing the same debt, RJM will have a

supervisor perform the investigation, and this new investigation will be reviewed by RJM's

Director of Credit Bureau Reporting.  (Affidavit of Lynn Cohen, at ¶6).

One of the four identity factors evaluated in Step Two as to Mr. Farren, namely, Mr.

Farren's listed address, did not correspond with the information on record for Mr. Farren.

(Deposition of Neil Matte, at p. 159, l.10 - p. 160, l. 13).  Additionally, information as to a date

of birth was missing, so RJM never had a "match" for the date of birth as to Mr. Farren.

(Deposition of Neil Matte, at p. 160, l.14 - p. 161, l.4).  According to RJM's Director of Credit

Bureau Reporting, when all of the identity factors do not match, but the name and social security

(and, in this case, the relevant state of residence) match, then RJM "modifies" the account to

represent the new information.  (Deposition of Lynn Cohen, at p. 33, ll.16-18).  RJM follows this

procedure because of the frequency with which people move to new addresses.  (Deposition of

Neil Matte, at p. 155, ll.18-22).

After completing its investigation as to Mr. Farren, RJM reported back to Experian that

---

[2] There is a dispute about whether or not this procedure is written.  Various RJM
employees testified at deposition that they learned the investigation procedure through one-on-
one training, but that it was not a written policy.  However, RJM's corporate representative
represented that there were written policies on point in memos.  These memos have not been
produced to Mr. Farren.

Regardless of whether the procedure was written or verbally presented to employees, the
Court finds that this procedure was clearly in effect at the time of Mr. Farren's dispute and the
employees were aware of the procedure, because all the RJM employees described the procedure
in substantially the same manner as described, and Mr. Farren has not identified or produced any
RJM employee who disputes that this procedure was in effect at the relevant time.  See Affidavit
of Samir Shah, at ¶¶ 7-13 (describing the procedure); Affidavit of Joan Tischler, at ¶¶ 4-19
(same); Affidavit of Cassandra Pannell, at ¶¶ 5-10 (same); Deposition of Neil Matte, at p. 117,
ll.5-23 (same).

the account information had been verified as reported and updated the address that RJM had in

its files from Fingerhut.  (Deposition of Neil Matte, at p. 154, ll. 11-14; Affidavit of Cassandra

Pannell, at ¶ 14).

      RJM performed another investigation upon receipt of the CDV from Trans Union.

(Affidavit of Cassandra Pannell, at ¶¶ 15-21).  RJM asserts that even though this second

investigation was not technically a "second" CDV because it was not a CDV showing the alleged

debtor challenged the findings of the first investigation but merely a CDV reflecting the same

dispute from a different credit reporting agency, it was performed nonetheless by a Supervisor

and reviewed by RJM's Director of Credit Bureau Reporting.  (Affidavit of Lynn Cohen, at ¶ 6).

As before, RJM reported back to Trans Union that the information had been verified.  (Affidavit

of Lynn Cohen, at ¶ 8).

      Experian and Trans Union notified Mr. Farren that the RJM account would remain on

Mr. Farren's credit report, despite the fact that all other debts Mr. Farren had disputed were

removed.  (Experian Correction Summary dated 8-9-03; Trans Union Investigation Results dated

8-13-03).  On August 13, 2003, RJM sent a "dunning" letter to Mr. Farren stating that it had

purchased the account and that RJM was Mr. Farren's new creditor.  The front of the letter stated

in bold print: "**Please see important information on reverse side**."  On the back of this letter

was the required validation language.  The letter also stated that "RJM is not a collection

agency."

      In response to this letter, Mr. Farren contacted RJM to dispute the debt.  (Deposition of

Richard Farren, at p. 19, ll.16-22; Affidavit of John Coscia, at ¶ 5).  He spoke with RJM's John

Coscia.  (Affidavit of John Coscia, at ¶ 5).  Neither Mr. Farren nor Mr. Coscia recall any

specifics of the telephone call. (Deposition of Richard Farren, at p. 14, ll.16-22; Deposition of John Coscia, at p. 22, ll.4-11). However, Mr. Coscia had noted in the RJM file that the account should be closed. (Affidavit of John Coscia, at ¶ 8). Experian was contacted by RJM after this telephone call and was asked to delete the delinquent information from Mr. Farren's credit report. (Affidavit of John Coscia, at ¶ 8). RJM claims that Trans Union was also contacted, (Affidavit of John Coscia, at ¶ 8), but representatives of Trans Union assert, and records from Trans Union support this assertion, that RJM did not contact Trans Union until March 2004, after the Complaint in this case was filed, to dispute these claims. (Declaration of Eileen Little, Trans Union Group Manager of Consumer Relations, at ¶ 5).

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Reviewing the record, the Court is obliged to "resolve all reasonable inferences in [the non-moving party's] favor." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999). The moving party, here RJM, bears the burden of showing that the record reveals no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the moving party has met its burden, the non-moving party, here Mr. Farren, must go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial. Id. However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," but must produce *competent evidence* supporting opposition. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).

To defeat a motion for summary judgment, factual disputes must be both material and genuine. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "material" if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law. Id. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving parties. Id. at 248-49. Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party. Anderson, 477 U.S. at 250.

## III.    LEGAL BACKGROUND

### A.    Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*

Under the FCRA, a furnisher of information has the duty to provide accurate information. In 15 U.S.C. § 1682s-2(b), the specific duties that are owed to an alleged debtor upon notice of dispute are enumerated. This statutory subsection is the one predominantly at issue here. Private causes of action for any violations are available under 15 U.S.C. § 1681n(a) (for "willfully fail[ing] to comply with any requirement...") or 15 U.S.C. § 1681o(a) (for "negligent[ly]... failing to comply with any requirement..."). In either case, a plaintiff is entitled to "any actual damages sustained" and an award of reasonable attorney's fees. 15 U.S.C. §§ 1681n(a)(1)(A) & (3) and 1681o(a). If the plaintiff shows the violation was willful, then the plaintiff is also entitled to

"such punitive damages as the court will allow."  15 U.S.C. § 1681n(a)(2).

### 1.   Duty to reasonably investigate

Pursuant to 15 U.S.C. § 1682s-2(b)(1), a data furnisher must "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency...; (C) report the result of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to... consumer reporting agencies..."

This provision has been construed to require a "reasonable investigation."  Johnson v. MBNA America Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004); Agosta v. Inovision, Inc., 2003 WL 22999213, at *6 (E.D. Pa. Dec. 16, 2003); Evantash v. G.E. Capital Mortg. Servs., Inc., 2003 WL 22844198, at *6 (E.D. Pa. Nov. 25, 2003).  While questions of reasonableness are generally an issue for the jury, Cushman v. Trans Union Corp., 115 F.3d 220, 227 (3d Cir. 1997), "summary judgment is proper if the reasonableness of the defendant's procedures is beyond question."  Westra v. Credit Controls of Pinellas, 2005 WL 1274277, at *1 (7th Cir. May 27, 2005) (citing Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001)).

### 2.   Preemption of state common law claims

Pursuant to 15 U.S.C. § 1681h(e), "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any... person who furnishes information to a consumer reporting agency... except as to false information furnished with malice or willful intent to injure such consumer."  Courts have generally interpreted this provision to only permit claims where the actions of the furnisher of information were willful.  See, e.g., Lawrence v. Trans Union, LLC, Civ. No. 02-

4440, 2003 WL 22992081, at *5-6 (E.D. Pa. Dec. 11, 2003); <u>Crane v. Trans Union, LLC</u>, Civ. No.  282 F. Supp. 2d 311, 321-22 (E.D. Pa. 2003); <u>Sheffer v. Experian Info. Solutions, Inc.</u>, 249 F. Supp. 2d 560, 563 (E.D. Pa. 2003).  Conversely, if the actions of the furnisher of information were not willful, the state law claims are preempted by 15 U.S.C. § 1681h(e) and the Court must dismiss those claims.

### B.   Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692e *et seq.*

Several practices by debt collectors are prohibited pursuant to 15 U.S.C. § 1692e. Included in these provisions is a prohibition against using a "false, deceptive, or misleading representation."  § 1692e.  The statute enumerates examples, including "[m]aking a false representation of the amount, character or legal status of a debt," § 1692e(2)(a), "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," § 1692e(8), and "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10).

The FDCPA is a strict liability statute, where violations are assessed from the perspective of the "objective least sophisticated consumer."  <u>Graziano v. Harrison</u>, 950 F.2d 107, 111 (3d Cir. 1991).  Any violation of the Act is sufficient to impose liability and permits an award of statutory and actual damages.  15 U.S.C. § 1692k.

## IV.   APPLICATION OF FCRA AND FDCPA TO MR. FARREN'S CLAIMS

### A.   Duty to Reasonably Investigate

RJM argues that its investigation as described above was all that was required by law,

9

namely a prompt review of all relevant information provided by the credit reporting agency and its own records. Because there is no evidence showing that the investigation was unreasonable, RJM argues it is entitled to summary judgment. Additionally, RJM argues that it cannot be expected to perform an investigation beyond the scope of the material provided by the credit reporting agency, which stated that the debtor's challenge was articulated as "not mine - provide complete ID & Company/Collect Agency Name (D)." Such a description would not lead RJM to believe that Mr. Farren was the victim of identity theft, and RJM had no duty to investigate beyond a determination that the debt was "his," in the sense that the records showed the debt was accrued by Mr. Farren (or someone who knew Mr. Farren's name and social security number).

In response, Mr. Farren argues that the reasonableness of the investigation is typically a question of fact that should be decided by the jury. In this case, the "five-step investigation," according to Mr. Farren, is simply the steps needed to complete the CDV and is not an investigation at all. Mr. Farren then notes a series of steps that were not taken by RJM that he claims would seem to be reasonable: calling or otherwise communicating with Mr. Farren; calling Experian and/or Trans Union to request more information or a clarification; checking Fingerhut's information on Mr. Farren; determining if the address given ever belonged to Mr. Farren; verifying Mr. Farren's date of birth; attempting to find the original application with Fingerhut or other documents that may demonstrate his responsibility or lack of responsibility for the Fingerhut purchase; or examining any information outside its own database. In fact, Mr. Farren points out, when RJM's investigation revealed discrepancies (i.e., in the date of birth and address), it simply modified its records rather than investigating these discrepancies. Finally, Mr. Farren argues the contradictory testimony regarding whether or not the policy was written and is

truly a policy that is followed in every case, including this one, raises a question of credibility that must be decided by the jury.

Mr. Farren argues for a broad interpretation of the FCRA. Although the Court of Appeals for the Third Circuit has not ruled on this issue, the Court of Appeals for the Seventh Circuit recently issued an opinion in Westra v. Credit Controls of Pinellas, 2005 WL 1274277 (7th Cir. May 27, 2005), that addresses the question of reasonableness of investigations by data furnishers and explicitly rejects the argument that a data furnisher needs to contact every debtor disputing a debt or go beyond a verification of the relevant information provided. Westra, 2005 WL 1274277, at *1. Specifically, the court of appeals in Westra held that an investigation essentially the same as that performed here by RJM was reasonable, given that the data furnisher had not been informed that fraud or identity theft was alleged, where the defendant "verified Westra's name, address, and date of birth." Id.

Mr. Farren relies heavily on Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997), arguing that this case holds that the question of reasonableness is an issue for the trier of fact. However, in Cushman the Court of Appeals for the Third Circuit addressed a failure of a *credit reporting agency* to perform an investigation, pursuant to 15 U.S.C. § 1681i(a), beyond "merely parroting information received from other sources." Cushman, 115 F.3d at 225. The court found that the "mere parroting" would result in the investigation required under 15 U.S.C. § 1681i(a) to be exactly the same as the investigation required under 15 U.S.C. § 1681e(b), improperly making the provision redundant with another in the statute. Id.

In this case, RJM is *not* a credit reporting agency, but rather a data furnisher with different obligations under the FCRA than those of a credit reporting agency. Mr. Farren would

11

have this Court place on data furnishers the same "grave responsibility" that credit reporting agencies have to reinvestigate as discussed in <u>Cushman</u>.  The Court finds that such a burden is not appropriate.  Congress configured a statutory scheme that subjects data furnishers to a standard different from that applied to credit reporting agencies.  Compare 15 U.S.C. § 1681s with 15 U.S.C. § 1681i.  The standard for data furnishers is only to: "(1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information."  <u>Westra</u>, 2005 WL 1274277, at *1 (citing 15 U.S.C. § 1681s-2(b)).

The parties do not dispute the fact of and elements constituting RJM's five-step procedure.  On its face, this procedure satisfies the requirements of the FCRA and is, for that reason, as a matter of law, reasonable.  Under the five-step procedure, employees of RJM perform an investigation of disputed information, they review all relevant information provided by the consumer reporting agency, they report the results of the investigation to the agency, and they are supposed to report erroneous information.  The standard Mr. Farren urges the Court to demand of RJM and similar data furnishers is significantly higher than the requirements found in 15 U.S.C. § 1681s-2(b).  The statute does not require RJM or any data furnisher to take extraordinary means to investigate and *discover* disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information provided to it matches the information in its records.  The Court will not impose duties upon a data furnisher that Congress did not see fit to impose.

However, the Court finds that genuine issues of material fact do exist as to whether RJM followed its procedure in its investigation concerning Mr. Farren's account. Specifically, RJM did not investigate an address that did not appear previously in Mr. Farren's record; nor did RJM look into a missing date of birth. RJM's second step in its procedure required a comparison of the information provided and notification to the credit reporting agency of any ambiguities or inaccuracies. A reasonable jury could find that RJM did not follow its own reasonable procedures in this case by failing to investigate the address conflict or missing date of birth further. It is also unclear whether RJM notified the credit reporting agencies of the potential conflict over the address or merely modified the CDV to reflect the address provided by the credit reporting agencies.

Additionally, as part of the investigation, RJM must timely notify the credit reporting agencies of its results. Once RJM determined that its earlier report was inaccurate or should be modified, RJM had a duty to timely notify the credit reporting agencies, including Trans Union. The dispute over when Trans Union was notified could lead a reasonable jury to find that RJM notified Trans Union in an untimely manner. As such, a reasonable jury could find RJM violated the FCRA by inappropriately delaying the issuance of the modified report of its investigation to Trans Union.

Because the Court finds that genuine issues of material fact exist that could lead a reasonable jury to find that RJM violated the FCRA, the Court will deny the motion for summary judgment on that basis. However, the Court will grant partial summary judgment to the extent that Plaintiff has posed a claim based on the argument that RJM's procedures are, on their face, unreasonable. In other words, the Court finds that Plaintiff may proceed only with the claim that

13

RJM did not abide by its own reasonable procedures in its investigation of Mr. Farren's dispute over his alleged debt.

### B.   Limited Liability of Common Law Claims

RJM argues that the FCRA prohibits certain common law claims, namely defamation, negligence, and invasion of privacy/false light, asserted by Mr. Farren.  RJM does acknowledge that the statutory prohibition of common law claims is not absolute, but argues that there is no evidence that supports a finding that RJM's actions were malicious or willful.  To show willfulness, in this context, "the plaintiff must show that the data furnisher knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive."  Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997).

Mr. Farren asserts that there is evidence that RJM's actions were willful.  Specifically, he delineates the allegations and evidence that RJM did not do a complete investigation, RJM did not mark as disputed the disputed debt, RJM failed to update the Trans Union credit report, and others.  According to Mr. Farren, while these acts may be viewed as incompetence or negligence, the Court must interpret them in favor of Mr. Farren at this juncture since a jury could find these facts to constitute malice or willfulness.

The Court agrees with Mr. Farren that all inferences must be made in favor of the non-moving party, namely Mr. Farren here.  However, Mr. Farren's entire argument hinges on the proposition that the procedures, which Mr. Farren contends are unreasonable, were followed in conscious disregard to Mr. Farren's rights.  However, as explained above, the Court finds that the procedures are reasonable and it only the potential issue of the negligent failure to abide by the procedures that may lead the jury to find a violation of the FCRA.  Therefore, the acts cited by

Mr. Farren as "willful" can only be described as simply "isolated instance[s] of human error."
Sheffer v. Experian Info., Solutions, Inc., Civ. No. 02-7407, 2003 WL 21710573, at *3 (E.D. Pa.
July 24, 2003) (quoting Boris v. Choicepoint Servs., 249 F. Supp. 2d 851, 862 (W.D. Ky. 2003)).
Mr. Farren has not referenced any evidence that could lead a reasonable juror to a different
conclusion.  Therefore, the Court finds that the limited liability protection of the FCRA applies to
RJM in this matter, and the state law claims against RJM are dismissed.

**C.     FDCPA Claim**

RJM argues the evidence does not create a genuine issue of material fact as to the various
arguments of Mr. Farren in Count Five of the complaint in which Mr. Farren claims pursuant to
various subparts of 15 U.S.C. § 1692e that RJM made "a false representation of the amount,
character or legal status of a debt;" communicated or threatened to communicate "to any person
credit information which is known or which should be known to be false, including failure to
communicate that a disputed debt is disputed;" failed to disclose clearly in all communications
that RJM is attempting to collect a debt; and otherwise used "false, deceptive, misleading, and
unfair or unconscionable means to collect or attempt to collect a debt."

**1.     False representation as to the amount, character, or legal status of a
          debt**

Pursuant to 15 U.S.C. § 1692e(2)(a), a debt collector violates the FDCPA if it makes "a
false representation as to the amount, character, or legal status of a debt."  RJM argues that no
evidence shows that it made a false representation as to the amount of the debt.  Mr. Farren does
not dispute this argument, and the evidence seems to show clearly that at all times RJM
consistently stated the debt was $61.66, which is an accurate presentation of the amount of debt

believed to be owed to RJM.

RJM does not specifically discuss the "character or legal status" of the debt at issue, but it does cite to <u>Greer v. Shapiro & Kreisman</u>, 152 F. Supp. 2d 679, 687 (E.D. Pa. 2001), in which the court held that a debt collector could not imply that a judgment has been entered on a debt. Presumably, RJM is claiming that it has not made any false representations regarding the character or legal status of the debt, because RJM has never referred to the debt as anything but an outstanding debt. In other words, there is no evidence that RJM suggested that it held a judgment against Mr. Farren.

Mr. Farren argues that RJM's reporting to Mr. Farren and to Experian and Trans Union that the debt was owed by Mr. Farren was a false representation of the "character" and/or "legal status" of the debt. However, Mr. Farren cannot cite to any evidence that RJM was contemporaneously aware that the debt was not owed by Mr. Farren. The FDCPA is a strict liability statute, but that does not alter the plain meaning of the predicate in the statute which requires a "false representation." In this case, there is no evidence to show that RJM, when it communicated with Mr. Farren, Experian, or Trans Union, was aware that the debt did not belong to Mr. Farren.

If the Court were to interpret the FDCPA as Mr. Farren requests, any debt collector or data furnisher who communicates in anyway about a debt that is later discovered not to be owed by the individual the debt collector originally thought owed it would be liable under the FDCPA. The Court will not interpret this statute so broadly as to create such a liability. The FDCPA was intended to protect debtors from offensive, misleading, and aggressive tactics by debt collectors, not to hold debt collectors or others in the industry that refrain from such tactics to a standard of

omniscience as to whether or not a debt will eventually be found to belong rightfully to someone other than the individual first identified as the debtor.

Therefore, the Court finds that Mr. Farren has not provided evidence to support a claim that RJM violated 15 U.S.C. § 1692e(2)(a), and summary judgment is granted as to any claims under this subsection of the FDCPA.

<h3 style="text-align:center">2.      Failing to communicate that a debt was disputed</h3>

RJM next asserts that it had no reason to know that the information it provided to Experian and Trans Union was in any way false or misleading, so its "communication" with them is not a violation of 15 U.S.C. § 1692e(8).  Further, according to RJM, as soon as Mr. Farren contacted RJM with the information that the debt was disputed, it asserts that it notified Experian and Trans Union.  Mr. Farren notes that the requirement under 15 U.S.C. § 1692e(8) is that RJM must communicate "that a disputed debt is disputed," and no such communication occurred.  Mr. Farren argues that RJM knew, or should have known, that the debt was disputed prior to any communications with Experian and Trans Union, so even the confirmation that the debt was accurate was a violation of this statute.

Under 15 U.S.C. § 1692e(8), a failure of a debt collector to "communicate that a disputed debt is disputed" is considered a violation of the FDCPA.  In this case, there is little question that RJM notified both Experian and Trans Union that the debt was disputed after the phone conversation between Mr. Farren and Mr. Coscia.  Thus, there are two issues for the Court, the first being whether there is evidence that RJM should have informed Experian and Trans Union prior to the phone call that there was a dispute and, second, whether the notification of Experian and Trans Union was timely.  Although RJM does not address these issues directly, the

implication from its argument that it properly notified Experian and Trans Union that the debt was disputed is that it believes there is no evidence that it was aware of a dispute prior to the phone call and that the notification was done timely.

Lynn Cohen, RJM's Director of Credit Bureau Reporting, stated that a "not his/her" tag on a CDV implies the debt is being disputed and this notation appeared on the initial CDV's sent to RJM.  RJM's Chief Financial Officer disputes that a "not his/her" tag is actually a reference to the debt being disputed.  Obviously, these contradictory positions create a genuine issue of material fact as to whether RJM had a duty prior to Mr. Farren's phone call to notify Experian and Trans Union that the debt, which RJM notified them was accurate, was being disputed.

Further, there is contradictory evidence on whether RJM contacted Trans Union in a timely fashion upon learning of the dispute.  Although the statute does not expressly require a reasonably timed notification, the Court finds that it is reasonable to interpret the statute as impliedly requiring the communication to be made in a reasonable time.  For the Court to interpret the statute as not requiring disclosure within a reasonable time would make the quoted language completely meaningless because an alleged debtor could suffer harm but have no cause of action if the data furnisher discloses at some distant point in time, even after the harm is suffered.   The alleged delay of approximately seven months in this case could certainly be found by a jury to be an unreasonable delay and a violation of the FDCPA.

Therefore, the Court denies summary judgment as to claims under 15 U.S.C. § 1692e(8).

### 3.    Failing to disclose that RJM is attempting to collect a debt

RJM argues that it satisfied the requirements of the FDCPA by including a disclosure on the reverse side of its letter to Mr. Farren and the "important information on reverse" language in

bold letters on the front.  Mr. Farren does not address this claim.

The Court finds that RJM's dunning letter sent to Mr. Farren is consistent with the requirements of 15 U.S.C. § 1692e(11) to "disclose in the initial... communication with the consumer... that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and ... in subsequent communications that the communication is from a debt collector."  15 U.S.C. § 1692e(11).  The Court has not been provided with any evidentiary basis to conclude that the telephone call between Mr. Farren and Mr. Coscia violated these requirements or that a jury could so conclude.  Therefore, the Court grants summary judgment as to any claims arising from 15 U.S.C. § 1692e(11).

### 4.   Using false, misleading and unfair or unconscionable means to collect

RJM next argues that the language in the letter stating that RJM is "not a collection agency" is not misleading.  In fact, RJM is a purchaser of debt, and, while it collects that debt, it is not a collection agency.  A collection agency is an entity that collects as an agent on behalf of a creditor, and typically receives a contingent fee for doing so successfully.

Mr. Farren argues that RJM is a collection agency and asserts that RJM admitted to such in its response to Mr. Farren's request for admissions.  However, the Court reviewed the relevant response in which RJM admitted to being a *debt collector*, not a *collection agency*.  Nonetheless, Mr. Farren curiously asserts that the term "not a collection agency" without further explanation is misleading and could lead a consumer reading the letter to the false belief that RJM was not sending a communication in order to attempt to collect a debt.

While RJM may be technically correct about the definition of "collection agency" versus "debt collector," the standard is whether the statements are misleading "through the eyes of the

19

least sophisticated consumer." Greer v. Shapiro & Kreisman, 152 F. Supp. 2d 679, 683 (E.D. Pa. 2001). In other words, a collection letter "is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." Id. However, the issue is not whether any one line is unclear, but whether the letter, as a whole, is deceptive and could be misread by "the least sophisticated consumer."

In the present case, read in isolation, RJM's assertion that it is "not a collection agency" possibly could mislead a consumer that RJM is not seeking to collect the debt. On the other hand, the letter, taken as a whole, makes it abundantly clear that RJM is attempting to collect a debt. Given the clear statements in the letter that RJM is collecting a debt, a reasonable juror could not conclude that the dunning letter has two or more different meanings. The language regarding RJM's status as "not a collection agency" might be somewhat confusing, but it does not make the entire letter deceptive or create an inaccurate meaning to the letter.

Mr. Farren also argues that many of RJM's communications to the credit agencies were false and misleading, and so it violated the FDCPA in that manner as well. Mr. Farren asserts that any reference in the communications between RJM and Experian or Trans Union that Mr. Farren owed the debt was deceptive. As discussed above, the Court will not hold RJM to a standard where a communication reasonably believed by the sender to be accurate is later found to be inaccurate is deemed "deceptive." As stated above, there is no evidence to show that RJM, when it communicated with Experian or Trans Union, was aware, or had reason to be aware, that the debt did not belong to Mr. Farren. Therefore, Mr. Farren's claim that RJM violated the FDCPA by informing Experian and Trans Union that Mr. Farren owed a debt is dismissed.

Therefore, the Court grants summary judgment as to the question of whether the dunning

20

letter was deceptive pursuant to 15 U.S.C. § 1692e.

**V.     <u>CONCLUSION</u>**

For the foregoing reasons, the Court grants in part and denies in part the Defendant's

Motion for Summary Judgment.  The Motion is granted as to Counts Four, Seven, Nine, and the

portions of Count Five described above.  The Motion is denied as to Count Two (except that any

claim that RJM's five-step procedure, on its face, violates the FCRA is dismissed) and denied as

to any remaining claims under Count Five.  An appropriate Order consistent with this

Memorandum follows.


BY THE COURT:


/S/_____
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD T. FARREN, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| RJM ACQUISITION FUNDING, LLC, | : | |
| Defendant | : | NO. 04-995 |

**O P I N I O N**

Gene E.K. Pratter, J.                                                                 July 26, 2005

AND NOW, this 26th day of July, 2005, upon consideration of Defendant RJM

Acquisitions Funding LLC's ("RJM") Motion for Summary Judgment (Docket No. 43) and

Supplemental Brief (Docket No. 56), Plaintiff Richard T. Farren's Response in Opposition

(Docket No. 50), and the presentations of counsel at oral argument on June 1, 2005, it is hereby

ORDERED that the Motion for Summary Judgment is GRANTED IN PART and DENIED IN

PART as follows:

1.      The Motion for Summary Judgment is DENIED as to Count Two of the

Complaint, except that the Motion for Summary Judgment is GRANTED as to any claim that the

five-step procedure of RJM, on its face, violates the Fair Credit Reporting Act;

2.      The Motion for Summary Judgment is GRANTED as to Counts Four, Seven, and

Nine of the Complaint;

3.      The Motion for Summary Judgment is GRANTED as to any claims in Count Five

pursuant to 15 U.S.C. §§ 1692e(2)(a) and 1692e(11) and any claim that the dunning letter from

RJM to Mr. Farren was deceptive; and

4.     The Motion for Summary Judgment is DENIED as to any remaining claims in

Count Five not dismissed in Paragraph 3 of this Order.




BY THE COURT:


/S/_____
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE