IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD T. FARREN** )<br>)<br>    **Plaintiff,** )<br>)<br>vs. )<br>)<br>**EXPERIAN INFORMATION** )<br>**SOLUTIONS, INC.** )<br>    and )<br>**TRANSUNION, LLC** )<br>    and )<br>**ANDERSON FINANCIAL NETWORK, INC.** )<br>    and )<br>**GMAC** )<br>    and )<br>**RJM ACQUISITIONS FUNDING LLC** )<br>)<br>    **Defendants.** )<br>) | **Civil Action No. 04 CV 995** |

**ORDER**

AND NOW, this ____ day of ____, 2005, upon consideration of the Defendant RJM Acquisition Funding LLC's Motion for Reconsider in Part the Order of July 29, 2005, relating to Summary Judgment, and any response thereto, it is hereby ORDERED and the Motion is GRANTED.  It is further ORDERED that summary judgment is granted to RJM on Counts 2 and 5 of Plaintiff's Complaint and that those counts are dismissed with prejudice.

_____
GENE E.K. PRATTER, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD T. FARREN )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>EXPERIAN INFORMATION )<br>SOLUTIONS, INC. )<br>    and )<br>TRANSUNION, LLC )<br>    and )<br>ANDERSON FINANCIAL NETWORK, INC. )<br>    and )<br>GMAC )<br>    and )<br>RJM ACQUISITIONS FUNDING LLC )<br>)<br>Defendants. )<br>) | Civil Action No. 04 CV 995 |

**DEFENDANT, RJM ACQUISITIONS FUNDING LLC'S, MOTION TO RECONSIDER IN PART THE COURT ORDER OF JULY 29, 2005.**

The Defendant, RJM Acquisitions Funding, LLC, by its attorneys, pursuant to

Federal Rule of Civil Procedure 56(c) and Local Rule 7.1 of the Eastern District of

Pennsylvania, respectfully moves this Court to reconsider, in part, the July 29, 2005

Order, in support thereof, RJM relies on the attached Brief and the Exhibits thereto (all

2

Exhibits were previously submitted to the Court in support of RJM's Motion for Summary Judgment, and are resubmitted here, for the Court's convenience).

                                      Respectfully submitted,
                                      RJM ACQUISITIONS FUNDING LLC

August 8, 2005                      By:   *Michael K. Sullivan*
                                             Michael K. Sullivan, Esq.
                                             Atty. I.D. No. 56607
                                             BLANK ROME LLP
                                             One Logan Square
                                             Philadelphia, PA 19103
                                             (215)569-5509

                                             Joseph S. Messer  (*pro hac vice)*
                                             Maria L. Whiteman (*pro hac vice)*
                                             Messer & Stilp, Ltd.
                                             166 W. Washington, Suite 300
                                             Chicago, Illinois 60602
                                             312-334-FIRM (3476)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD T. FARREN** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 04 CV 995 |
| ) | |
| **EXPERIAN INFORMATION** ) | |
| **SOLUTIONS, INC.** ) | |
| and ) | |
| **TRANSUNION, LLC** ) | |
| and ) | |
| **ANDERSON FINANCIAL NETWORK, INC.** ) | |
| and ) | |
| **GMAC** ) | |
| and ) | |
| **RJM ACQUISITIONS FUNDING LLC** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT, RJM ACQUISITIONS FUNDING
LLC'S BRIEF IN SUPPORT OF MOTION TO
RECONSIDER IN PART THE COURT ORDER OF JULY 29, 2005.**

**INTRODUCTION**

RJM Acquisitions Funding LLC ("RJM") is entitled to summary judgment on all counts of Plaintiff's Complaint. The uncontroverted evidence shows that RJM fully complied with § 1682s-2(b)(1) of the Fair Credit Reporting Act ("FCRA") and did not violate § 1692e(8) of the Fair Debt Collection Practices Act ("FDCPA"). Therefore, this Court should reconsider, in part, its July 29, 2005 Order denying RJM's Motion for Summary Judgment as to Count Two and the remaining claims in Count Five of Plaintiff's Complaint.

**JURISDICTION**

This Court has jurisdiction to reconsider its July 29, 2005 Order because denial of summary judgment motion is an interlocutory order.  *See* McKethan v Texas Farm Bureau, 996 F2d 734, 738 (5th Cir. 1993), *cert. denied*, (510 U.S. 1046 (1994)).  This trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in absence of new evidence or intervening change in or clarification of substantive law.  Id.  Moreover, summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact.  *See* Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A court should grant a motion for summary judgment when the record shows that a reasonable jury could not find for the nonmoving party.  *See* Evantash v. G.E. Capital Mortgage Services, Inc., 2003 U.S. Dist. LEXIS 23131, *8 (E.D. Pa. 2003).

**ARGUMENT AND RELEVANT LAW**

A trial is not necessary in this case because RJM is entitled to summary judgment on all of the claims in Counts Two and Five of Plaintiff's Complaint.  First, this Court should reconsider its July 29, 2005 ruling and grant RJM summary judgment on Count Two of Plaintiff's Complaint because the evidence shows that (a) RJM followed its five-step investigation procedure in full compliance with § 1682s-2(b)(1) of the FCRA, and (b) RJM's investigation met the standard imposed by the Court of Appeals for the Seventh Circuit in Westra v. Credit Controls of Pinellas, 2005 WL 1274277 (7th Cir. May 27, 2005), and adopted by this Court in its Court's July 29, 2005 ruling.  Second, this Court should reconsider its July 29, 2005 ruling and grant RJM summary judgment on

2

Count Five of Plaintiff's Complaint because (a) RJM did not violate the requirement imposed by the plain language of § 1692e(8) of the FDCPA, and (b) in any event the evidence shows that RJM timely notified Experian and Trans Union regarding Plaintiff's dispute and requested that its tradeline be deleted from Plaintiff's credit report.

## I. RJM IS ENTITLED TO SUMMARY JUDGMENT ON COUNT TWO OF PLAINTIFF'S COMPLAINT BECAUSE RJM FULLY COMPLIED WITH § 1681s-2(b) OF THE FCRA.

Pursuant to § 1681s-2(b) of the FCRA a data furnisher, such as RJM, has the following obligation upon receipt of a CDV from a consumer-reporting agency ("CRA") such as Experian or Trans Union.[1]  The data furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of its investigation to the CRA within 30 days; and (4) if the investigation finds the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the person furnished the information and maintain consumer files on a nationwide basis.  *See* 15 U.S.C. § 1681s-2(b).  In this case the uncontroverted evidence shows that RJM's employees followed RJM's five-step investigation procedure and timely reporting the results back to Experian and Trans Union in compliance with § 1681s-3(b) of the FCRA.

---

[1] The duty to investigate a consumer's credit reporting dispute rests primarily with the CRA reporting the debt.  CRAs such as Experian and Trans Union have an obligation under 1681i(a) to conduct a reinvestigation upon notice of a dispute from a consumer.  *See* 15 U.S.C. §1681i(a).  A CRAs obligation to reinvestigate requires more than "mere parroting" of the creditor's information.  *See* Crane v. Trans Union, LLC, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003)(citing Henson v. CSC Credit Servs., 29 F.3d 280, 286-87(7th Cir. 1994)).  CRAs bear some responsibility for evaluating the accuracy of information obtained from data furnishers.  *See* Crane, 282 F. Supp. 2d at 318(citing Stevenson v. TRW, Inc., 987 F.2d 288, 293 (5th Cir. 1993)).

3

### A. RJM EMPLOYEES TESTIFIED THAT THEY FOLLOWED RJM'S 5-STEP § 1681s-2(b) INVESTIGATION PROCEDURE AND PLAINTIFF HAS NOT ADVANCED EVIDENCE TO THE CONTRARY.

The Court has found that RJM's five-step procedure was reasonable as a matter of law. *See* Court Order Dated July 29, 2005. And the uncontroverted evidence shows that RJM followed its five-step procedure when investigating the Experian and Trans Union CDVs. First, Joan Tischler testified that she completed the five-step process upon receipt of the Experian CDV on or about July 29, 2003. *See* Ms. Tischler's Affidavit attached as Exhibit A at ¶ 12.[2] Second, Cassandra Pannell testified that she reviewed the results of Ms. Tischler's investigation before reporting the results back to Experian. *See* Affidavit of Ms. Pannell's attached as Exhibit B at ¶ 13. Ms. Pannell also testified that she completed the five-step procedure upon receipt of the Trans Union CDV. *See* Affidavit of Ms. Pannell attached as Exhibit B at ¶¶ 15-22. Finally, Lynn Cohen testified that she reviewed the Trans Union CDV before reporting the results back to Trans Union. *See* Affidavit of Ms. Cohen's attached as Exhibit C at ¶¶ 7-9.

Plaintiff failed to offer any evidence to the contrary to the assertion that RJM employees followed the five-step procedure.[3] Plaintiff merely argued that RJM's 5-step procedure was not reasonable and argued for a higher investigation standard, which this Court rejected when it ruled that "[t]he standard Mr. Farren urges the Court to demand of

---

[2] All of the Exhibits attached to this Motion were previously attached to RJM's Motion for Summary Judgment. The Exhibits have been attached hereto for the convenience of the Court.

[3] Plaintiff did argue that "RJM Director of Credit Bureau Reporting, Lynn Cohen, even contradicted her own Affidavit during her deposition as to whether Mr. Farren's dispute to TU was handled according to procedures for initial disputes or subsequent disputes." *See* Plaintiff's Response at p. 24. However, such distinction is without a difference because RJM's five-step procedure is followed regardless if it is an initial dispute or a subsequent dispute. *See* Affidavit of Ms Pannell attached as Exhibit B at ¶¶ 5-22; *see also* Affidavit of Ms. Cohen attached as Exhibit C at ¶¶ 6-9.

RJM and similar data furnishers is significantly higher than the requirements found in 15 U.S.C. § 1681s-2(b)." *See* the July 29, 2005 Memorandum and Opinion at 12.

Despite the uncontroverted evidence, this Court held, "a reasonable jury could find that RJM did not follow its own reasonable procedures in this case by failing to investigate the address conflict or missing date of birth." *See* the July 29, 2005 Memorandum and Opinion at 13. However the evidence shows that RJM did investigate the "address conflict" and discharged its duties under § 1681s-2(b) with respect to that conflict by reporting the address in RJM and Fingerhut's records back to Experian on the CDV it returned to Experian. *See*, the returned Experian CDV, attached as Exhibit D. In fact, the Experian CDV does not ask that RJM verify the identification information, it merely states, "Please check the 'SAME' box for each identification item appearing on the CDV which is identical to your records. Provide different information in the shaded area." *See* Exhibit D. The "Verified as Reported" box is next to the account information, not the identification information. See Exhibit "D." Accordingly, RJM followed its procedures when it provided Experian with the "different" address in its records and verified the account information as reported. Thus, RJM had no obligation to report the results of its investigation to Trans Union pursuant to § 1691s-2(b)(1) because RJM did not determine that its reporting was incomplete or inaccurate.

Further, the evidence shows that RJM did not violate § 1681s-2(b) with respect to the "missing date of birth," because RJM, having never received information regarding the debtor's date of birth on the Fingerhut account, had nothing to investigate. *See* the Fingerhut Account Statement attached as Exhibit E. Moreover, Plaintiff cannot expect RJM to investigate his date of birth when Plaintiff did not provide a date of birth on the

5

Experian CDV.  *See* Exhibit D.  Because RJM had no conflicting information regarding the date of birth set forth in the Experian and Trans Union CDVs, RJM had nothing to report back to those CRAs regarding the issue pursuant to § 1681s-2(b).

Further, this Court stated that it was "unclear whether RJM notified the credit reporting agencies of the potential conflict over the address or merely modified the CDV to reflect the address provided by the credit reporting agencies." *See* the July 29, 2005 Memorandum and Opinion at 13.  The CDVs demonstrate, however, that RJM notified Experian that it had "different" identification information by filling in the shaded area next to the address field on the CDV.  Moreover, the instructions on the Trans Union CDV were as follows: "Check the corresponding **Same** box for each item that is identical to your records.  If any of this information on the left is incorrect, write the corrections in the boxes on the right."  According to RJM's records, although the P.O. Box in Tampa, Florida was not listed as an address for the Plaintiff, it does not mean that the address was "incorrect."[4]

Finally, the evidence shows that when RJM returned the CDVs to Experian and Trans Union – within 30 days as required under § 1681s-2(b)(1) - RJM timely notified the credit reporting agencies of the results of its investigation.  *See*, the return dates of July 25, 2003 and July 29, 2003 set forth on the returned Experian CDV attached as Exhibit D and the Trans Union CDV attached as Exhibit F.  Accordingly, RJM is entitled to summary judgment on Count Two of Plaintiff's Complaint.

---

[4] The Trans Union CDV is also clear that the Trans Union is only requesting RJM to verify the account information.  As stated next in the middle of the CDV, "Verify the following account information and select one of the three options along the left side.  If appropriate, identify changed information in the shaded box directly below the item."  This set of instructions only pertains to the account information and not the identification information.  RJM did not modify the account information as reported on Plaintiff's account.  Therefore, RJM had no obligation to update the CRAs regarding any incomplete or inaccurate reporting pursuant to § 1681s-2(b).

**B. RJM'S § 1681s-2(b) INVESTIGATION PROCEDURE MET THE STANDARD IMPOSED BY *WESTRA* AND CORRECTLY ADOPTED BY THIS COURT.**

This Court correctly adopted the standard established by the Court of Appeals for the Seventh Circuit in Westra, 2005 WL 1274277. at *1. In Westra the court found an investigation essentially the same as that performed by RJM to be reasonable, given that the data furnisher had not been informed that fraud or identity theft was alleged. Id. This was the exact situation faced by RJM when it received the Experian and Trans Union CDVs. Id. In applying this standard this Court correctly ruled that § 1681s-2(b) "…does not require RJM or any data furnisher to take extraordinary means to investigate and *discover* disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information provided to it matches the information in its records." *See* the July 29, 2005 Memorandum and Opinion at 12. As the uncontroverted evidence shows, this is precisely the type of investigation RJM conducted in response to the Experian and Trans Union CDVs.

At the time it received the Experian and Trans Union CDVs, RJM was not on notice that it should investigate the "address conflict" because Experian did not provide RJM with a copy of the letter Plaintiff sent to Experian stating that he never used the P.O. Box in Tampa, Florida. *See* Plaintiff's Letter to Experian attached hereto as Exhibit G. As this Court noted, the FCRA imposes different obligations on CRAs than data furnishers. *See* July 29, 2005 Memorandum and Opinion at 11. Specifically, under § 1681i(a)(2)(A) of the FCRA, CRAs are obligated to, among other things, provide notification of the dispute to the data furnisher and *include all relevant information*

7

*regarding the dispute that the agency has received from the consumer. See* 15 U.S.C. § 1681i(a)(2)(A) (emphasis added).

Because Experian failed to provide RJM notice that there was an "address conflict," RJM had no obligation to conduct a more thorough investigation under §1681s-2(b). Experian and Trans Union were parties to this lawsuit and both have settled with the Plaintiff. Thus, Plaintiff has already been compensated by Experian and Trans Union's for their failure to comply with §1681i(a)(2)(A) by providing RJM will all of the relevant information regarding Plaintiff's dispute pursuant. Accordingly, it would be unfair, and legally illogical, for this Court not to grant summary judgment in RJM's favor on Plaintiff's §1681s-2(b) claim.

Similarly, the fact that Plaintiff's date of birth was missing from RJM's records does not impose a more thorough investigation on RJM under § 1681s-2(b). In fact, the only reason the date of birth was "missing" was because whoever purchased the 9-piece chili set from Fingerhut –the original creditor – using Plaintiff's name and social security number did not provide one. *See*, Fingerhut Account Statement attached as Exhibit E. Thus, when RJM reviewed the statement of account that it received from Fingerhut during its investigation, it was not on notice that there was anything inaccurate or incomplete regarding Plaintiff's date of birth.[5]

Finally, if this Court's July 29, 2005 Memorandum and Opinion is allowed to stand, it will provide every consumer who causes a CDV to be sent to a data furnisher

---

[5] Logically, the absence of a date of birth, or a different address, in the original creditor's files does not give rise to a more thorough investigation under 1681s-2(b). It is not standard in the retail industry to require a consumer to provide a date of birth when purchasing merchandise from a mail order catalog, the Internet or from a consumer in a face-to-face transaction at a retail store. Moreover, debtors often move or use alternative mailing addresses, which may or may not appear on a debtor's credit report.

who lacks the consumer's date of birth or current address with a "wild card" to force a jury trial on the issue of whether the data furnisher's investigation under § 1681s-2(b) was reasonable. And the consumer will hold this wild card regardless of whether the CDV fails to explain the consumer's dispute, or how exhaustive the data furnisher's investigation is in response to the CDV. This cannot be the state of the law. Accordingly, RJM is entitled to summary judgment on Count Two of Plaintiff's Complaint.

## II. RJM IS ALSO ENTITLED TO SUMMARY JUDGMENT ON COUNT FIVE OF PLAINTIFF'S COMPLAINT BECAUSE RJM DID NOT VIOLATE § 1692e(8) OF THE FDCPA.

RJM did not violate the requirement imposed by the plain language of § 1692e(8) of the FDCPA. Under § 1692e(8) of the FDCPA a debt collector such as RJM is prohibited from:

> communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8). In response to Plaintiff's allegation in Count 5 of his Complaint that RJM violated § 1692e(8) of the FDCPA this Court found that there were two issues for it to decide, "…the first being whether there is evidence that RJM should have informed Experian and Trans Union prior to the phone [conversation between Plaintiff and John Coscia of RJM] that there was a dispute, and second, whether the notification of Experian and Trans Union was timely." *See* the July 29, 2005 Memorandum and Opinion at 17. Respectfully, by framing the issue as it has the Court has misconstrued the requirement of §1692e(8) of the FDCPA. While §1692e(8) would prohibit a debt collector who knows that a debt is disputed from reporting that debt to a CRA without

9

communicating that the debt is disputed, nothing in §1692e(8) requires a debt collector who subsequently learns of a dispute to independently report that dispute to the CRAs to which the debt collector previously reported the debt.  Rather, the obligation of §1692e(8) to report the debt as disputed would only arise if the debt collector were to again communicate to the CRA regarding the debt.

Moreover, the Federal Trade Commission ("FTC") staff commented on this issue on December 13, 1988, and stated as follows:

> **Section 807(8)** prohibits "Communicating or threatening to communicate to any person [false] credit information . . . , including the failure to communicate that a disputed debt is disputed."
>
> *1. Disputed debt.* If a debt collector knows that a debt is disputed by the consumer, either from receipt of written notice (section 809) or other means, and reports it to a credit bureau, he must report it as disputed.
>
> *2. Post-report dispute.* When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported.

 *See* 53 Fed. Reg. 50097-50110 (Dec. 13, 1988); *see also* FTC website at http://www.ftc.gov/os/statutes/fdcpa/commentary.htm#807 (last visited on August 8, 2005).  Thus, the plain language of the FDCPA and the FTC make it clear, a debt collector does not have an affirmative obligation to report a debt as disputed if the debt collector is apprised of the dispute after reporting the debt to a consumer reporting agency.

In this case, Plaintiff has proffered no evidence that RJM knew of Plaintiff's dispute until he called Mr. Coscia of RJM and explained the dispute to him.  And even if it could be said that Plaintiff's call to Mr. Coscia triggered an obligation on RJM's behalf

under §1692e(8) to report the debt to the CRAs as disputed (which it could not because §1692e(8) does not impose this obligation) the evidence shows that RJM timely requested that Experian and Trans Union delete its tradeline from Plaintiff's credit report. Specifically, in support of its Motion for Summary Judgment, RJM presented testimony and two documents establishing the fact that RJM timely instructed Trans Union to delete RJM's tradeline on Plaintiff's credit report.

First, RJM presented the testimony of John Coscia, which states that he instructed both CRAs to delete the reporting on August 24, 2003. *See* Affidavit of John Coscia attached hereto as Exhibit H at ¶ 8. Second, RJM's collector notes corroborate Mr. Coscia's testimony indicating that a request to the CRAs to delete RJM's reporting of the account on August 24, 2003. *See* RJM's Collector Notes attached hereto as Exhibit I. Moreover, RJM presented a copy of its October 2003 tape that was sent to Trans Union in October 2003, which does not contain Plaintiff's account.[6]  *See* the printout of RJM's reporting in October 2003 attached hereto as Exhibit J.

Finally, the Trans Union's representative states that it did not receive a communication from RJM from August 2003 through April 2004 regarding Plaintiff's account. *See* Declaration of Eileen Little attached hereto as Exhibit K at ¶ 5. Thus, the only communication made by RJM to any persons after learning that Plaintiff disputed the debt was the communications to Trans Union and Experian, in which RJM requested that its tradeline be deleted from Plaintiff's credit report. Accordingly, as a matter of law,

---

[6] The only evidence that Plaintiff has offered in opposition to these facts is documentation and a declaration from a representative of Trans Union that RJM did not request that it delete its tradeline until April 2004, after this lawsuit was filed. However, Trans Union is no longer a party in this lawsuit as it settled with Plaintiff and has been dismissed. Trans Union also entered into a written settlement agreement with Plaintiff, which Plaintiff refused to produce during discovery, citing a settlement agreement containing a confidentiality clause. Thus, Plaintiff has already recovered for any "harm" that he may have suffered from Trans Union's failure to delete RJM's tradeline in August 2003.

11

this Court must find that RJM did not violate §1692e(8) of the FDCPA and therefore RJM is entitled to summary judgment on Count Five of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, Defendant RJM Acquisition Funding LLC respectfully asks this Court to reconsider its July 29, 2005 Order with respect to Counts 2 and 5 only, and to find as a matter of law that RJM is also entitled to summary judgment on Counts 2 and 5.

                                        Respectfully submitted,
                                        RJM ACQUISITIONS FUNDING LLC

August 8, 2005                       By: /s/  *Michael K. Sullivan*
                                        Michael K. Sullivan, Esq.
                                        Atty. I.D. No. 56607
                                        BLANK ROME LLP
                                        One Logan Square
                                        Philadelphia, PA 19103
                                        (215)569-5509

                                        Joseph S. Messer  (*pro hac vice*)
                                        Maria L. Whiteman (*pro hac vice*)
                                        Messer & Stilp, Ltd.
                                        166 W. Washington, Suite 300
                                        Chicago, Illinois 60602
                                        312-334-FIRM (3476)

## CERTIFICATE OF SERVICE

Michael K. Sullivan hereby certifies that on this date a true and correct copy of Defendant RJM Acquisition Funding LLC's Motion for Reconsideration in Part of the Court Order of July 29, 2005 was served on Plaintiff's counsel by first class United States mail, postage prepaid, at the following address:

John Soumilas, Esq.
Francis & Mailman, P.C.
19th Floor, Land Title Building
100 South Broad Street
Philadelphia, PA 19110

Dated: August 8, 2005                    _/s/_ Michael K. Sullivan__
                                         Michael K. Sullivan