IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD T. FARREN** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 04 CV 995 |
| ) | |
| **EXPERIAN INFORMATION** ) | |
| **SOLUTIONS, INC.** ) | |
| and ) | |
| **TRANSUNION, LLC** ) | |
| and ) | |
| **ANDERSON FINANCIAL NETWORK, INC.** ) | |
| and ) | |
| **GMAC** ) | |
| and ) | |
| **RJM ACQUISITIONS FUNDING LLC** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT, RJM ACQUISITIONS FUNDING LLC'S, TRIAL BRIEF**

The Defendant, RJM Acquisitions Funding, LLC ("RJM"), by its attorneys, pursuant to the Court's Scheduling Order of October 13, 2004 and Standing Order, states as its Trial Brief as follows:

**INTRODUCTION**

The uncontroverted evidence shows that RJM fully complied with § 1682s-2(b)(1) of the Fair Credit Reporting Act ("FCRA") and did not violate § 1692e(8) of the Fair Debt Collection Practices Act ("FDCPA").

**I. RJM FOLLOWED ITS FIVE (5) STEP REASONABLE PROCEDURE UPON RECEIPT OF THE CONSUMER DISPUTE VERIFICATION FORMS FROM TRANS UNION AND EXPERIAN.**

   A.   RJM followed its Five (5) Step Reasonable Procedure

The Court suggests that a genuine issue of material fact exists as to whether RJM negligently followed its investigation procedure concerning Plaintiff's account by not investigating an address that did not appear previously in Plaintiff's record and a missing birth date. RJM was not negligent, however, because RJM was limited in the extent to which it could investigate such information practically, and to the extent it was required to investigate under the FCRA.

Pursuant to § 1681s-2(b) of the FCRA a data furnisher, such as RJM, has certain obligations upon receipt of a consumer dispute verification form ("CDV") from a consumer-reporting agency ("CRA"), such as Experian or Trans Union.[1] The data furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of its investigation to the CRA within 30 days; and (4) if the investigation finds the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the person furnished the information and maintain consumer files on a nationwide basis. *See* 15 U.S.C. § 1681s-2(b).

The facts show that RJM did the following upon receipt of the CDVs from Experian and Trans Union: (1) RJM conducted an investigation; (2) RJM reviewed all the information provided by Experian and Trans Union; and (3) RJM reported the results to Experian and Trans Union within 30 days of its receipt of their respective CDVs. The

---

[1] The duty to investigate a consumer's credit reporting dispute rests primarily with the CRA reporting the debt. CRAs such as Experian and Trans Union have an obligation under 1681i(a) to conduct a reinvestigation upon notice of a dispute from a consumer. *See* 15 U.S.C. §1681i(a). A CRAs obligation to reinvestigate requires more than "mere parroting" of the creditor's information. *See* Crane v. Trans Union, LLC, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003)(citing Henson v. CSC Credit Servs., 29 F.3d 280, 286-87(7th Cir. 1994)). CRAs bear some responsibility for evaluating the accuracy of information obtained from data furnishers. *See* Crane, 282 F. Supp. 2d at 318(citing Stevenson v. TRW, Inc., 987 F.2d 288, 293 (5th Cir. 1993)).

investigation did not indicate that RJM's original credit reporting was inaccurate, and, thus, RJM had no further duty under the FCRA.

This Court found that RJM's five-step procedure was reasonable as a matter of law. *See* Memorandum and Opinion Order Dated July 29, 2005. And the evidence shows that RJM followed its five-step procedure when investigating the Experian and Trans Union CDVs. Accordingly, RJM is not liable for any alleged violation of the FCRA.

Moreover, this Court found that the FCRA "does not require RJM or any data furnisher to take extraordinary means to investigate and *discover* disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information provided to it matches the information in **its records**. The Court will not impose duties upon a data furnisher that Congress did not see fit to impose." *See* Memorandum and Opinion Order dated July 29, 2005, p. 13 (emphasis added). RJM did not have date of birth information in **its records** for Plaintiff's account, therefore, RJM was not required to discover this new item of information to satisfy it's duties under the FCRA. Even if RJM did have the duty to discover Plaintiff's date of birth—which it did not according to this Court's ruling—RJM had no way to do so because the original creditor had dissolved and, therefore, could not be contacted for additional account information.

Further, RJM was not required to investigate Plaintiff's change of address under the FCRA because this would also require RJM to discover new information in **its records**. Seeking out verification of every address change on every account is practically impossible, especially considering how frequently people move. Plaintiff himself moved

more than six times between 1997 and 2003. *See* Plaintiff's Deposition Transcript, p. 7, lines 18-22, pp.12-13. The argument that a data furnisher needs to contact every debtor disputing a debt or go beyond verification of the relevant information provided was rejected by this Court in its Memorandum and Opinion Order dated July 29, 2005. *See* Memorandum and Opinion Order dated July 29, 2005, at 11.

RJM cannot be expected to have tracked down six address changes in six years for the Plaintiff's account—that would require an extraordinary investigation. Even Plaintiff could not keep track of all of his past addresses. *See* Plaintiff's Deposition Transcript, pp.12-13. Instead, the reasonable and efficient process that exists and that is reflected in the duties of data furnishers and credit reporting agencies by the FCRA is for RJM to fill out the CDV it receives from a credit reporting agency with the information RJM has for the account in question and send the CDV back to the credit reporting agency. Then, the credit reporting agency, which has records for many accounts for each individual debtor, compares the all of collected information it has to determine whether the debt matches the debtor. This Court recognized the different roles and duties of data furnishers and credit reporting agencies in this process under FCRA in its Memorandum and Opinion Order dated July 29, 2005. *See* Memorandum and Opinion Order dated July 29, 2005, at 11.  This is the investigation process that RJM followed. Therefore, RJM did not negligently follow its five step reasonable procedure.

Furthermore, the Court states in its Memorandum and Opinion Order that "It is unclear whether RJM notified the credit reporting agencies of the potential conflict over the address or merely modified the CDV to reflect the address provided by the credit reporting agencies." *See* Memorandum and Opinion Order dated July 26, 2005, p. 13.

4

RJM made the credit reporting agencies aware of the discrepancy in address by following the process supported by the FCRA: RJM filled in the address RJM had on file for Plaintiff, checked the "same" boxes to show the credit reporting agency which items of information matched its records and which items of information differed from its records, and returned the CDV to the credit reporting agency. Therefore, RJM fulfilled its duties under the FCRA and did not negligently follow its five step process.

    **B.    Plaintiff Suffered No Actual Damages as a Result of the Alleged FCRA violation.**

This Court already found as a matter of law that RJM did not willfully violate the FCRA. Thus, the only way Plaintiff can prevail in this case is if he can show that RJM negligently violated the FCRA. A claim for negligent non-compliance with the FCRA consists of the following four (4) elements: (1) inaccurate information included in a consumer report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. *See* Philibin v. Trans Union Corp., 101 F.3d 957 (3rd Cir. 1996). In this case, RJM did not cause Plaintiff to suffer actual damages.

The Third Circuit has applied a high standard to damage claims for emotional distress. For example, in *Gunby v. Pennsylvania*, 840 F.2d 1108 (3rd Cir. 1988), a racial discrimination case, the court required the plaintiff present sufficient evidence to support an award of damages for emotional distress and did not allow speculative damages unsupported by proof that such injury actually occurred. *Gunby*, 840 F.2d at 1121-1122.

The Third Circuit's standard is in line with that of other Federal Circuits, such as that of the Seventh Circuit, which maintains a strict standard for a finding of emotional

damage because emotional damages are easy to manufacture. *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971 (7th Cir. 2004); *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004). The Seventh Circuit requires "when 'the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements.'" *Sarver,* 390 F.3d at 971; *Wantz*, 386 F.3d at 834.

Similarly, the Fifth Circuit upholds a stringent standard for a finding of emotional distress damages in FCRA cases that is based on the United States Supreme Court's ruling in *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978), regarding the necessity of proper evidentiary support in order to award damages for emotional distress or mental anguish. To establish intangible loss a plaintiff must prove a "degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." *Cousin v. TransUnion Corp.*, 246 F.3d 359, 371 (5th Cir. 2001).

Other circuits have also applied this standard. *See, e.g.*, in the Eleventh Circuit, *Levine v. World Fin. Network Nat'l Bank*, 2004 U.S. Dist. LEXIS 22864 (D. Ga. 2004) (plaintiff's claims of emotional distress damages was dismissed because no objectively verifiable harm occurred as a result of the Defendants' alleged conduct.), and *Riley v. Equifax Credit Info. Servs.*, 194 F. Supp. 2d 1239, 1244-1245 (D. Ala. 2002) (a claim for mental distress damages must be supported by something more than the plaintiff's own conclusory allegations and evidence of genuine injury should be the injured party's conduct and the observations of others); in the Eighth Circuit, *Reed v. Experian Info. Solutions, Inc.*, 321 F.Supp. 2d 1109, 1115(8th Cir. 2004) (citing *Forshee v. Waterloo*

6

*Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999)) (emotional distress claims "must be supported by competent evidence of genuine injury").

Based on his deposition testimony, Plaintiff will be unable to provide an explanation of the circumstances of his emotional injury in specific detail, and instead will only be able to provide general conclusory statements of alleged emotional damages. In his deposition Plaintiff provided only broad conclusions and general statements of damages for humiliation, mental distress, emotional distress, injury to Plaintiff's reputation, anxiety, embarrassment, and frustration:

> Q: I want to go through, first of all, what are your serious injuries as a result of your alleged failure by RJM?
>
> [Mr. Soumilas objection omitted.]
>
> A: The pure frustration, aggravation, embarrassment. Just dealing with this credit reporting has affected me in a lot of ways that I'm extremely cautious now any time someone asks information from me. I worry about it constantly. It affects every aspect of my financial life. Its truly aggravating, and I worry about it constantly.

*See* Plaintiff's Deposition Transcript p. 37.

Plaintiff's conclusory statements of emotional injuries are the only evidence he has and those statements fail to establish evidence. He failed to provide any further detail of emotional distress or mental anguish. Further, Plaintiff does not have any objective evidence of actual damages beyond his conclusory statements of emotional injury. Although he claims that he was initially turned down for credit by Burdines, he admits that Burdines granted credit to him a short time later and that he no longer uses that line of credit because there is no Burdines in the area in which he lives. *See* Plaintiff's

Deposition Transcript p. 47-49. The letter sent to Plaintiff by Burdines denying him credit does not state that RJM's credit reporting was the reason for the denial of credit. *See* Plaintiff's Deposition Transcript, Exhibit 10.

Furthermore, Plaintiff stated in his deposition that he had no other injuries:

> Q: Any other times that you're aware of that you were denied credit?
> A: Not to my knowledge.
> Q: Any other damages that you allege you suffered as a result of RJM's account on your credit report?
> A: No.

*See* Plaintiff's Deposition Transcript p.49.

Plaintiff's statement is further borne out by his deposition testimony that he received the mortgage he sought:

> Q: Did you obtain a mortgage from Countrywide at this time?
> A: I received my mortgage for the purchase of my current house, yes.
> Q: Do you recall when you closed on that mortgage?
> A: September the 1st, 2003.

*See* Plaintiff's Deposition Transcript p.24.

And:

> Q: And just so I'm clear, the mortgage you applied for in the summer of 2003 with Countrywide, you were approved for that mortgage, correct?
> A: Yes, after I had to verify that the negative credit entries were being disputed.

*See* Plaintiff's Deposition Transcript p.51.

Plaintiff suffered no actual damages and, therefore, will be unable to show a causal relation between his alleged violations of the FDCPA and FCRA, and any damages suffered. "Without a causal relation between the violation of the statute and the loss of credit or some other harm, a plaintiff cannot obtain an award of "actual

damages"." *Crabill v. TransUnion, L.L.C.,* 259 F.3d 662, 664 (7th Cir. 2001). This holding is supported by the United States Supreme Court's ruling in *Doe v. Chao*, 540 U.S. 614, 157 L. Ed. 2d 1122, 1127 (2004) stating that a plaintiff must prove some actual damages to qualify for a minimum statutory award (overruling *Johnson v. Department of Treasury*, 700 F.2d 971 (5th 1983)) and has been applied in the Third Circuit in *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996), in the Second Circuit in *Casella v. Equifax Credit Information Service*, 56 F.3d 469, 473 (2d Cir. 1995), and in the Eleventh Circuit in *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991).

Plaintiff will be unable to testify at trial, as he was unable to testify in his deposition, how any action by RJM caused a loss of credit or any other harm to Plaintiff and admitted that he had "considerable negative entries on my credit report" causing harm to his credit years before RJM ever appeared on his credit report. *See* Plaintiff's Deposition Transcript p. 24-25. Therefore, Plaintiff will not be able to prove he suffered any injury and unable to prove RJM violated the FCRA through negligent non-compliance.

**II.     RJM DID NOT VIOLATE § 1692e(8) OF THE FDCPA.**

RJM did not violate the requirement imposed by the plain language of § 1692e(8) of the FDCPA.   Under § 1692e(8) of the FDCPA a debt collector such as RJM is prohibited from:

> communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8).  In response to Plaintiff's allegation in Count 5 of his Complaint that RJM violated § 1692e(8) of the FDCPA this Court found that there were two issues for it to decide, "…the first being whether there is evidence that RJM should have informed Experian and Trans Union prior to the phone [conversation between Plaintiff and John Coscia of RJM] that there was a dispute, and second, whether the notification of Experian and Trans Union was timely."  *See* the July 29, 2005 Memorandum and Opinion at 17.

First, under the FDCPA RJM was not required to inform Experian and Trans Union upon receipt of the CDVs that Plaintiff was disputing the debt. While §1692e(8) would prohibit a debt collector who already knows that a debt is disputed from then reporting that debt to a CRA without communicating that the debt is disputed, nothing in §1692e(8) requires a debt collector who learns of a dispute subsequent to reporting a debt to then independently report that dispute to the CRAs to which the debt collector previously reported the debt.

After RJM filled out and returned the CDVs to TransUnion and Experian, RJM did not communicate to TransUnion and Experian regarding the debt until RJM notified TransUnion and Experian that the debt was deleted. Therefore, RJM was not obligated to report to TransUnion and Experian that the debt was disputed.

Support for this position is found in the Federal Trade Commission ("FTC") staff comments:

> **Section 807(8)** prohibits "Communicating or threatening to communicate to any person [false] credit information . . . , including the failure to communicate that a disputed debt is disputed."

10

> *1. Disputed debt.* If a debt collector knows that a debt is disputed by the consumer, either from receipt of written notice (section 809) or other means, and reports it to a credit bureau, he must report it as disputed.
>
> *2. Post-report dispute.* When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported.

*See* 53 Fed. Reg. 50097-50110 (Dec. 13, 1988); *see also* FTC website at http://www.ftc.gov/os/statutes/fdcpa/commentary.htm#807 (last visited on August 8, 2005). Thus, the plain language of the FDCPA and the FTC commentary make it clear: a debt collector does not have an affirmative obligation to report a debt as disputed if the debt collector is apprised of the dispute *after* reporting the debt to a consumer reporting agency.

Even if it could be said that the CDVs RJM received regarding the debt triggered a duty to report the debt to the CRAs as disputed, RJM complied with this duty because the CDV forms RJM returned to Trans Union and Experian specifically state "Consumer ***Dispute*** Verification" across their tops. And in any event, TransUnion and Experian are the ones who send out the CDVs based on information they receive from consumers and therefore TransUnion and Experian already know that when consumers are disputing debts. Therefore, by simply sending the CDV to RJM, the credit reporting agencies were aware that a dispute existed so that it would be redundant and pointless for RJM to contact the credit reporting agencies to inform them a dispute existed.

Finally, the issue of whether RJM's notification of Experian and Trans Union regarding a dispute was timely becomes irrelevant because RJM was not obligated to report the debt as disputed after it originally reported the debt to those credit reporting agencies. However, if Plaintiff's call to Mr. Coscia had triggered an obligation on RJM's

11

behalf under §1692e(8) to report the debt to the CRAs as disputed (which it did not because §1692e(8) does not impose this obligation) the evidence shows that in response to Plaintiff's phone call RJM timely requested that Experian and Trans Union delete its tradeline from Plaintiff's credit report when RJM updated its reporting of the debt in late August 2003. Therefore, RJM complied with 15 U.S.C. §1692e(8).

                                             Respectfully submitted,
                                             RJM ACQUISITIONS FUNDING LLC

October 21, 2005                       By:   */s/ Joann Needleman*
                                                  Joann Needleman, Esq.
                                                  935 One Penn Center
                                                  Philadelphia, PA 19103
                                                  (215) 665-1133

*Of Counsel*:
Joseph S. Messer
Messer & Stilp, Ltd.
166 W. Washington, Suite 300
Chicago, Illinois 60602
312-334-FIRM (3476)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD T. FARREN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 04 CV 995 |
| ) | |
| EXPERIAN INFORMATION ) | |
| SOLUTIONS, INC. ) | |
| and ) | |
| TRANSUNION, LLC ) | |
| and ) | |
| ANDERSON FINANCIAL NETWORK, INC. ) | |
| and ) | |
| GMAC ) | |
| and ) | |
| RJM ACQUISITIONS FUNDING LLC ) | |
| ) | |
| Defendants. ) | |

CERTIFICATION OF SERVICE

Joann Needleman, Esq., hereby certifies that on this date, the foregoing Trial Brief was served via US Mail, postage prepaid upon the following counsel of record:

> Mark D. Mailman, Esq.
> John Soumilas, Esq.
> Francis & Mailman, P.C.
> Land Title Building, 19th Floor
> 100 South Broad Street
> Philadelphia, PA 19110

October 21, 2005

> Respectfully submitted,
> RJM ACQUISITIONS FUNDING LLC
> By: */s/ Joann Needleman*
> Joann Needleman, Esq.
> 935 One Penn Center
> Philadelphia, PA 19103
> (215) 665-1133

13